IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

JIM H. FALKNER, an individual, )
)
        Plaintiff, )
)
v. ) Case No. CIV-09-250-KEW
)
THE YAFFE COMPANIES, INC., )
)
        Defendant. )

## OPINION AND ORDER

This matter comes before the Court on Defendant's Motion for Summary Judgment filed on March 26, 2010 (Docket Entry #36) and Plaintiff's Motion for Partial Summary Judgment on Defendant's Liability for Wrongful Discharge, Age Discrimination and Inapplicability of Defendant's Affirmative Defense filed March 26, 2010 (Docket Entry #34). The briefing is completed on the issues addressed in the Motions and the Court renders this ruling.

Plaintiff Jim H. Falkner ("Falkner") was employed by Defendant The Yaffe Companies, Inc. ("Yaffe") at its Arkoma shredding facility as the Plant Manager or Plant Superintendent for thirty one years until his termination on September 3, 2008 at the age of sixty one. Falkner was an at-will employee during his tenure.

On August 13, 2008, Yaffe circulated a memorandum directed to "Employees With Access to Confidential Information." The memorandum was from Lyle Bachman ("Bachman"), Yaffe's Executive Vice-President of Administration in Muskogee, Oklahoma. In the memorandum, Bachman states

> The success of The Yaffe Companies, Incorporated and its subsidiaries (the Company), in part, relies on information that is considered confidential and proprietary. Confidential information and trade secrets are property of the Company and as an employee of the Company, you have a responsibility to protect any information deemed confidential or a trade secret.
>
> The Company is implementing a Confidentiality and Non-Solicitation Agreement. Please review the enclosed agreement, sign and return it to your yard manager.
>
> If you have questions regarding the agreement, contact Lyle Bachman in Muskogee at (800) 759-2333.

The memorandum had appended to it a document entitled, "Confidentiality and Non-Solicitation Agreement" (the "Agreement"). Yaffe required all employees with access to confidential or company trade secret information to sign the Agreement. The number of affected employees was stated as "in the neighborhood of 110." Yaffe employs approximately 400 persons. The purpose for instituting the requirement for certain employees to sign the Agreement was stated by Bachman as to "give employees incentive to stay with us. If they chose not to and compete against us, there were remedies for the Yaffe Companies."

Glenn Yaffe, CEO for Yaffe, stated the impetus for requiring the Agreement was a circumstance where the company had "some management people leave one of the operating companies, Borg, and then start soliciting our employees, . . ." A qualifying employer required to sign the Agreement was eventually extended to "those who came into contact with [Yaffe's] customers."

Three Yaffe employees did not sign the Agreement – Falkner,

Robby Meredith, and Chris Meredith. The Merediths were supervised by Falkner at the Arkoma facility. Mr. Yaffe testified Falkner was required to sign the Agreement because of his "supervisory position." Robby Meredith was required to sign because he was Falkner's assistant and Mr. Yaffe described him as "[a]ssistant shredder manager." Chris Meredith was considered a buyer.

Sean Yaffe, Yaffe' Executive Vice President and Regional Operations Manager, testified that Falkner "had access to accounts, purchase reports, he knew volumes, he knew who we dealt with as customers, trade secrets with equipment, things of that nature."

Upon receipt of the memorandum and the Agreement, Falkner expressed some concern over the terms of the Agreement to Bachman. Falkner asked if he could have an attorney examine the Agreement and advise him. Bachman told Falkner it would be fine to do so and that they wanted Falkner to be comfortable with the Agreement.

Falkner hired an attorney, Robert Stockton in Poteau, Oklahoma, to review the Agreement. After Mr. Stockton had examined the Agreement, Falkner spoke again with Bachman and told him Mr. Stockton had concerns "about the liabilities and different things" associated with the Agreement. Mr. Stockton made no suggestions for changes or modifications to the Agreement while Falkner did not request Mr. Stockton to suggest any such changes or modifications.

Falkner again spoke with Bachman and told him about Mr. Stockton's concerns with the Agreement. Bachman told Falkner that

3

"if [Falkner] would draft something that [he] would be comfortable with and send it to [Bachman], that they would look at it and see what they could do." Falkner did not draft any changes to the Agreement. He did state that he described his problems with the Agreement to Bachman as "[b]asically, it's page 4." Falkner did not believe the Agreement, as it applied to him, was discriminatory based upon his age but rather he "felt that it put [him] and [his] family at too great a liability that [he] didn't want to accept."

Prior to his termination, Falkner spoke with Bachman and Glenn Yaffe. Bachman told Falkner that "if I dug my heels in, it could possibly mean termination." Glenn Yaffe told Falkner that "if I didn't sign the agreement, we would part company." Falkner did not sign the Agreement and on September 3, 2008, he received a Termination Notice. The Termination Notice provided the reason for his "discharge" to be the "failure to sign the company confidentiality and non-solicitation agreement." The Termination Notice also contained an Exit Evaluation which set forth four areas of consideration – quality, productivity, conduct, and attendance. Falkner was given a "satisfactory" evaluation in all areas with the exception of "conduct" for which he received an "unsatisfactory" rating.

Additionally, the form indicated Falkner would not be eligible for rehire. Sean Yaffe checked this box on the Termination Notice "because [he] felt [Falkner] was responsible for the other

employees under his supervision, Robby Meredith and Chris Meredith, refusing to execute the Agreement."

Robby Meredith, age 50, was also terminated for failing to sign the Agreement. He did not contact Bachman with his concerns over the Agreement because he took his concerns to Falkner. Robby Meredith expected Falkner to ask Bachman about his concerns. He believed "there is a chain of command and you don't step out of that chain of command unless you are forced to. I didn't feel like we was forced to." Robby Meredith was relying upon Falkner to get answers to the questions he had over the Agreement, but he does not remember the questions he had. He does remember that he believed the Agreement "looked like if you had, with or without cause, caused some – you left and then you, with or without cause, caused someone else to leave and go to work somewhere else, that you could be sued."

Robby Meredith asked Falkner if he took his concerns to Bachman. Falkner told him Bachman "had told him to write it up the way he thought it needed to be, and – and submit it to him, and they would look it over." However, Robby Meredith testified that "as far as I know, he – it didn't – it didn't get drafted." Robby Meredith believed two to three weeks passed between the time he had the conversation with Falkner over the Agreement and his termination. Robby Meredith was contacted by Mark Leverett with Yaffe about not signing the Agreement three or four days before

being terminated. Robby Meredith told Mr. Leverett that Falkner was dealing with Bachman on it. Robby Meredith's primary problem with his termination was that he was not aware that the failure to sign the Agreement was a "firing offense" and he had not had the opportunity to find out any questions about the Agreement. Robby Meredith did not believe he or Falkner had been terminated due to their age. He did believe, however, that Falkner and Sean Yaffe "did not relate to one another and did not get along" and that this was his "only guess as to why [Falkner] was marked for not eligible for rehire." Robby Meredith's Termination Notice was marked that he was eligible for rehire.

Chris Meredith, age 26, was also terminated for failing to sign the Agreement. His Termination Notice was marked, indicating he was eligible for rehire. Chris Meredith did not believe Falkner was terminated due to his age. He believed Falkner and Sean Yaffe "butted heads." Chris Meredith did not agree with "a portion of the agreement" and that is why he did not sign it. He did not believe it to be inappropriate to be fired because he would not sign the Agreement. Chris Meredith approached Falkner and Robby Meredith as his supervisors about the Agreement and that they consulted an attorney. The attorney advised not to sign the Agreement. Chris Meredith never heard anyone at Yaffe discuss Falkner's or any other employees' age or long-tenured employees' Employee Stock Ownership Plan. He did not know what adverse action

would be taken against him for not signing the Agreement until the date of his termination. Chris Meredith did not contact anyone with Yaffe about his concerns because he was using the chain of command, going through his supervisor and allowing him to handle it. Chris Meredith was relying upon Falkner to work out some modification to the Agreement.

Falkner instituted this lawsuit on July 1, 2009, alleging he was terminated in violation of the Age Discrimination in Employment Act ("ADEA"). Falkner also asserted claims based in state law for violation of the Oklahoma Anti-Discrimination Act and wrongful termination in violation of Oklahoma public policy.

In his summary judgment Motion, Falkner contends (1) the Agreement was unlawful and against public policy and, therefore, he is entitled to judgment on his state law based claim for wrongful discharge; and (2) judgment on his ADEA claim, finding that the legitimate, non-discriminatory reason for terminating him was unreasonable and a pretext for age discrimination since the Agreement was unnecessary for him to sign given he did not have access to the information the Agreement sought to prevent disclosure.

Yaffe, in turn, seeks summary judgment, asserting (1) Falkner cannot meet his burden on his ADEA claim; (2) it has offered a legitimate, non-discriminatory reason for Falkner's termination and denotation as ineligible for rehiring which was not pretextual; (3)

Falkner's claim under the Oklahoma Anti-Discrimination Act fails with the ADEA claim; and (4) Falkner was not discharged in contravention to a clear Oklahoma public policy.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that, "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears the initial burden of showing that there is an absence of any issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

**Effect of the *Gross* Case Upon Falkner's ADEA Claim**

Clearly, the Supreme Court's recent pronouncement in the case of <u>Gross v. FBL Financial Services, Inc.</u>, 129 S.Ct. 2343 (2009) has altered the level and nature of the burden upon an employee bringing an ADEA claim. The ADEA provides, in pertinent part, that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The Supreme Court interpreted an employee's burden employing the plain language of the statute by establishing that "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." <u>Gross</u>, 129 S.Ct. 2343, 2351 (2009). Mixed motivations – that is, whether age was one of the factors in the adverse employment action taken against the employee – do not enter into the consideration of the merits of the case by the fact finder at trial.

The effect of the <u>Gross</u> ruling at the summary judgment stage is, however, suspect in this Circuit. Several unpublished cases coming from the Tenth Circuit Court of Appeals indicates the <u>McDonnell Douglas</u> burden shifting formula still applies when considering summary judgment in an ADEA case where, as here, age

9

discrimination is alleged through circumstantial evidence. *See,* Phillips v. The Pepsi Bottling Co., 2010 WL 1619259, 3 (10th Cir. Colo.); Woods v. Boeing Co., 2009 WL 4609678, 5 (10th Cir. Kan.); Reeder v. Wasatch Co. School Dist., 2009 WL 5031335, 3 (10th Cir. Utah).

**Falkner's ADEA Claim**

Under the burden shifting rubric, Falkner must provide evidence to meet the requirements of the test for a *prima facie* case established in the case of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). In order to satisfy his burden of demonstrating a *prima facie* case of intentional age discrimination, Faulkner must show that: (1) he belongs to the protected age group; (2) his job performance was satisfactory; (3) he was discharged; and (4) he has some evidence Yaffe intended to discriminate against him in reaching its decision. Hinds v. Sprint/United Management Co., 523 F.3d 1187, 1195 (10th Cir. 2008)(citation omitted). The first three elements are not contested by Yaffe. In support of the fourth element, Falkner directs attention to the fact his Termination Notice indicates he is not eligible for rehire when two younger individuals who were also terminated, Robbie and Chris Meredith, were eligible for rehiring. Recognizing this argument, Yaffe does not dispute Falkner has demonstrated a *prima facie* case.

Once an employee has shown a *prima facie* case of intentional age discrimination, the burden shifts to the employer to provide a

10

legitimate, non-discriminatory reason for the employment action that it took. If the employer makes this showing, the burden shifts back to the employee to prove that the reason provided is a mere pretext for the discriminatory reason for the employment action. Furr v. Seagate Technologies, Inc., 82 F.3d 980, 985 (10th Cir. 1996) *cert. denied* 117 S.Ct. 684 (1997).

Yaffe has met its burden of proffering the legitimate, non-discriminatory reason for Falkner's termination – the refusal to sign the Agreement. The burden then shifts to Falkner to demonstrate the reason offered is pretext for age discrimination.

A review of the parameters available for judicial review of a business decision is useful, as they are not unlimited. Pretext can be shown by "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Rivera v. City & County of Denver, 365 F.3d 912, 925 (10th Cir. 2004). The court's inquiry does not extend to whether the employer's reasons were wise, fair or correct – the relevant inquiry is whether the employer honestly believed its reasons and acted in good faith upon them. Timmerman v. U.S. Bank, N.A., 483 F.3d 1106, 1120 (10th Cir. 2007). "Even a mistaken belief can be a legitimate, non-pretextual reason for an employment

decision." Piercy v. Maketa, 480 F.3d 1192, 1200 (10th Cir. 2007). "A challenge of pretext requires a court to look at the facts as they appear to the person making the decision to terminate, not the aggrieved employee." Id. "The reason for this rule is plain: our role is to prevent intentional discriminatory hiring practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments." Young v. Dillon Cos., 468 F.3d 1243, 1250 (10th Cir. 2006).

Falkner first contests that requiring him to sign the Agreement can ever constitute a legitimate reason for his termination, contending that the Agreement is unlawful and void under the prevailing Oklahoma law. No evidence has been introduced to indicate Yaffe, through its decision makers, were aware that the Agreement was invalid under Oklahoma law and yet required its employees to sign it in any event.[1] Indeed, several terms of the Agreement are admittedly arbitrary, ill-advised, and possibly improper - most notably, the length of the term of restriction and the amount of the liquidated damages awarded should an employee violate the Agreement's terms. But this is not the standard for a showing of pretext. From Yaffe's viewpoint, the Agreement was legitimate, had legitimate business purposes, and was required of all of its employees it perceived to have access to confidential or

---

[1] This Court does not by this statement rule upon the validity of the Agreement under Oklahoma law. As will be discussed further in this Opinion and Order, this issue need not be reached.

12

proprietary information. Falkner argues evidence of pretext exists through the fact he did not have access to confidential customer information as alleged by Yaffe. In Glenn Yaffe's and Bachman's view, Falkner did have access to such information and their perception is what this Court must evaluate. Their belief and perception is not unreasonable under the facts presented.

Falkner's position that Yaffe's actions were a designed to cover intentional age discrimination against him extend the bounds of credulity beyond reason. To accept Falkner's argument for pretext, one would be required to find that Yaffe subjected 110 employees to the requirement to sign the Agreement in the singular effort to terminate Falkner. Yaffe would then have to be charged with the knowledge in this scheme that Falkner, out of the 110 employees, would refuse to sign the Agreement – as Falkner testified that he agrees he would not have been terminated had he signed the Agreement. Yaffe would have had to know that Falkner's subordinates in Robbie and Chris Meredith would also refuse to sign the Agreement in order to give them the pretextual excuse not to deem him eligible for rehiring.[2] Yaffe, under Falkner's theory,

---

[2] This Court notes that Robbie Meredith, while younger than Falkner, would qualify as being a member of a protected age class under the ADEA. If Yaffe were indeed targeting older employees, it would stand to reason that Robbie Meredith would have been deemed ineligible for rehire. This gives evidentiary support to Yaffe's contention that Falkner was designated as ineligible for rehiring because it believed Falkner instigated the refusal to sign the Agreement with his subordinates. Yaffe's conclusion may have been incorrect – but being incorrect in the basis for an employment decision does not constitute intentional discrimination.

would then have to know that Falkner would not obtain alternative language for the Agreement from an attorney as Yaffe's decision makers clearly offered.

To be sure, Yaffe benefitted financially from Falkner's termination since he was to receive significant remuneration from his Employee Stock Ownership Plan and other benefits. No evidence, however, even remotely suggests that this was Yaffe's motivation in terminating Falkner. Whether this is an equitable, fair way to treat a thirty year employee is subject to debate and opinions of outrage. This Court's analysis is limited to whether Falkner has met his burden of producing evidence of pretext. He has not, thereby entitling Yaffe to summary judgment on Falkner's ADEA claim.

**Falkner's Burk and Oklahoma Anti-Discrimination Claims**

Falkner also brings state law claims for wrongful termination, contending that Yaffe's requirement that he sign an unlawful Agreement or face termination is against public policy in Oklahoma. The judicially created cause of action for wrongful termination as against public policy finds its genesis in the case of Burk v. K-Mart Corp., 770 P.2d 24 (Okla. 1989). This theory for recovery has contracted and expanded through the various decisions of the Oklahoma Supreme Court over time with the latest trend toward expansion. See e.g. Shepard v. CompSource Okla., 209 P.3d 288 (Okla. 2009); Shirazi v. Childtime Learning Center, Inc., 204 P.3d

75 (Okla. 2009); <u>Kruchowski v. Weyerhaeuser Co.</u>, 202 P.3d 144 (Okla. 2008). The Oklahoma Supreme Court may or may not recognize Falkner's wrongful termination claim under the facts presented by this case. This Court need not reach the issue since the sole basis for federal jurisdiction lies in the federal question posed by the ADEA. Supplemental jurisdiction over the wrongful termination and the Oklahoma Anti-Discrimination Act claims is declined, this Court having dismissed all claims over which it possesses original jurisdiction. 28 U.S.C. § 1367(c)(3).

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment filed on March 26, 2010 (Docket Entry #36) is hereby **GRANTED** as it pertains to Falkner's ADEA claim. Supplemental jurisdiction is declined as to the remaining state law claims.

IT IS FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment on Defendant's Liability for Wrongful Discharge, Age Discrimination and Inapplicability of Defendant's Affirmative Defense filed March 26, 2010 (Docket Entry #34) is hereby **DENIED**.

IT IS SO ORDERED this 2nd day of June, 2010.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE